UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| LOUISE W. JOHNSON, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | Case No. 6:14-cv-1621-CLS |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant, Louise Johnson, commenced this action on August 21, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered her subjective complaints of pain, improperly evaluated her credibility, and improperly relied upon the opinion of a non-examining reviewing consultant physician. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision should be affirmed.

**A.     Pain and Credibility**

To demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Furthermore, "[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not

creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (alteration supplied).

The ALJ applied those standards in his administrative decision. He concluded that claimant's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but he nonetheless found that claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible.[1]

With regard to the side effects of claimant's medications, the ALJ stated:

> The claimant testified she cannot drive when she takes medication for her carpal tunnel syndrome as she gets drowsy and has a hard time concentrating. . . . Although the claimant has alleged various side effects from the use of medications, the medical records, such as office treatment notes, do not corroborate those allegations; further, the records indicate the claimant is not taking narcotic medication for her pain but instead has been prescribed Naproxen to relieve her wrist pain.[2]

As an initial matter, it was legally appropriate for the ALJ to consider the side effects of claimant's medications. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv) and 416.929(c)(3)(iv) (stating that the Commissioner should consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms") (alteration supplied). Even so, claimant challenges

---

[1] Tr. 60.
[2] Tr. 61.

the ALJ's findings as being inconsistent with the medical evidence. Dr. Charles Nolen, claimant's treating physician, made a notation in claimant's file after each visit she made to his office that he had discussed the risks, benefits, and side effects of all medications with her.[3] Contrary to claimant's suggestion, those notations do not establish a record that she complained about medication side effects. Instead, Dr. Nolen's statements indicate that he discussed the *potential* side effects, as well as the risk and benefits, of claimant's medications — something a doctor would be expected to do as a matter of course. Dr. Nolen also noted on January 30, 2012, that claimant "feels fatigued and run down all the time."[4] There is no indication, however, that either claimant or Dr. Nolen linked claimant's fatigue to her medications on that occasion. Claimant did report experiencing drowsiness after starting Glucotrol for her diabetes on February 3, 2012, but that is the only complaint of drowsiness or other side effects in Dr. Nolen's records. Next, claimant asserts that the ALJ improperly stated that claimant had *only* been prescribed Naproxen for pain, and, indeed, the record also indicates that claimant also was prescribed Ultracet. Despite that factual error, however, the court concludes that the ALJ's decision to reject claimant's complaints of disabling medication side effects was supported by substantial evidence, as there is little to no medical evidence corroborating her

---

[3] Tr. 376, 379, 381-83.
[4] Tr. 379.

subjective complaints of side effects.

The ALJ also considered claimant's daily activities in evaluating her credibility. He stated:

> At the hearing, the claimant indicated she could not do any housework or yard work because of her pain; however, the claimant indicated previously that she was capable of doing vacuuming, dusting, laundry, and using a riding lawnmower to do yard work. . . . The claimant is independent in her personal care and grooming. . . . At the hearing, claimant indicated she could throw food in the microwave, but reported previously that she could cook all kinds of meals. . . . Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely credible.[5]

Those were permissible considerations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i) (stating that the Commissioner should consider a claimant's "daily activities" in evaluating her credibility). Even so, claimant contends that the ALJ's conclusions were not supported by substantial evidence, because her statements on the Function Report were not actually inconsistent with her hearing testimony, and the ALJ simply "cherry picked" portions of the Function Report that would support his finding of no disability.[6] After a careful review of the Function Report, the court concludes that the ALJ did not misrepresent its contents, and he did not omit any material portions.

---

[5] Tr. 62 (citations to the administrative record omitted).
[6] Doc. no. 9 (claimant's brief), at 12.

Additionally, claimant asserts that the only reason her hearing statements reflected more serious limitations than her Function Report was that her condition worsened over time. However, she mostly relies upon her own testimony to support that assertion. The only medical evidence claimant cited was a July 21, 2011 statement by Dr. Toheed Kamal, a specialist in endocrinology, metabolism, and diabetes, that her diabetes was "fairly progressive."[7] That single statement does not present a longitudinal picture of the progression of claimant's disease. Furthermore, Dr. Toheed also stated that claimant's diabetes was "uncontrolled" because her dietary habits had been poor, and he encouraged claimant to control her diet, lose weight, and exercise.[8] Without more convincing evidence to support claimant's position, the court cannot conclude that the ALJ's credibility determination was unsupported by substantial evidence.

Finally, claimant suggests that the ALJ improperly considered her limited daily activities in evaluating her credibility.[9] It is true that the Eleventh Circuit has disavowed the notion that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Lewis v. Callahan,*

---

[7] Tr. 351.

[8] Tr. 351-52.

[9] This argument, if it can be deemed such, consists of a single sentence: "Moreover, it must be noted that 'participation in everyday activities of short duration, such as housework or fishing, [does not] disqualif[y] a claimant from disability.'" Doc. no. 9 (claimant's brief), at 13 (alterations in original) (citation omitted).

125 F. 3d 1436, 1441 (11th Cir. 1997). That does not mean, however, that a claimant's ability to carry out daily activities should not be considered at all in the disability determination process. To the contrary, the Social Security regulations discussed above expressly provide that such activities *should* be considered. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i) (listing "daily activities" first among the factors the Social Security Administration will consider in evaluating a claimant's pain). Here, claimant's daily activities were only one factor the ALJ considered in evaluating the credibility of claimant's pain allegations, and the ALJ's conclusions were supported by the record.

**B.     State Agency Physician**

Next, claimant argues that the ALJ improperly relied upon the assessment of Dr. Richard Heilpern, the state agency physician. Dr. Heilpern did not treat or examine claimant. Instead, he completed a Residual Functional Capacity Assessment after reviewing claimant's medical records. Dr. Heilpern indicated that, during a normal workday, claimant could occasionally lift and/or carry up to fifty pounds, frequently lift and/or carry up to twenty-five pounds, stand and/or walk for a total of six hours, sit for a total of six hours, and perform unlimited pushing and/or pulling movements. She could only occasionally balance, but could frequently perform all other postural functions. She had no manipulative, visual, communicative, or

7

environmental limitations.[10]

The ALJ afforded Dr. Heilpern's assessment only partial weight. He credited most of the assessment, but added a limitation to light work with manipulative limitations due to "claimant's repeated complain[ts] of fatigue and wrist pain."[11] According to claimant, though, "the opinion of a non-examining reviewing physician is entitled to little weight, and taken alone, does not constitute substantial evidence to support an administrative decision."[12] Contrary to claimant's suggestion, Social Security regulations provide that the opinions of state agency physicians are entitled to substantial consideration. *See* 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i) (stating that, while the ALJ is not bound by the findings of a State Agency physician, the ALJ should consider such a reviewing physician to be both "highly qualified" and an "expert" in Social Security disability evaluation). *See also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence."); *Surber v. Commissioner of Social Security Administration*, No. 3:11–cv–1235–J–MCR, 2013 WL 806325, *5 (M.D. Fla. March

---

[10] Tr. 366-73.

[11] Tr. 62 (alteration supplied).

[12] Doc. no. 9 (claimant's brief), at 15.

5, 2013) (slip copy) ("State agency medical consultants are non-examining sources who are highly qualified physicians and experts in Social Security disability evaluation, and their opinions may be entitled to great weight if supported by evidence in the record."). The ALJ's consideration of Dr. Heilpern's assessment was supported by substantial evidence of record.

**C.     Conclusion and Order**

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 11th day of May, 2015.

_____
United States District Judge